Patrick N. Keegan, Esq. (SBN 167698)
pkeegan@keeganbaker.com
James M. Treglio, Esq. (SBN 228077)
jtreglio@keeganbaker.com
**KEEGAN & BAKER, LLP**
6156 Innovation Way
Carlsbad, CA 92009
Tel:     (760) 929-9303
Fax:     (760) 929-9260

Walter Haines, Esq. (SBN 71075)
walter@whaines.com
**THE UNITED EMPLOYEES LAW GROUP**
5500 Bolsa Avenue, Ste 201
Huntington Beach, CA 92649
Telephone: (310) 234-5678
Facsimile: (562) 256-1006

Attorneys for Plaintiff
SERGIO MARQUEZ

## UNITED STATES DISTRICT COURT

## BY AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO MARQUEZ, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION, a national association; BUSINESS INFORMATION GROUP, INC., a corporation; TALX CORPORATION, d/b/a EQUIFAX WORKFORCES SOLUTIONS, a corporation;<br><br>Defendants. | Case No. 17-CV-00555-CW<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sergio Marquez (hereinafter "Plaintiff" or "Marquez"), individually and on behalf of others similarly situated, alleges upon personal knowledge as to himself and his acts stated herein, and as to all other matters upon information and belief as follows:

1.     This class action arises from Defendants' preparation, acquisition and use of consumer reports to conduct background checks on Plaintiff and similarly situated prospective and current employees. Defendant BUSINESS INFORMATION GROUP, INC. and  Defendant TALX CORPORATION, d/b/a

EQUIFAX WORKFORCES SOLUTIONS are in the business of preparing and providing consumer reports to employers, and Defendant BANK OF AMERICA, NATIONAL ASSOCIATION is an employer throughout the United States of America, who routinely obtains consumer reports on its prospective employees and its employees from Defendant BUSINESS INFORMATION GROUP, INC., Defendant TALX CORPORATION, d/b/a EQUIFAX WORKFORCES SOLUTIONS and other suppliers of consumer reports, and then uses the information contained in such consumer reports in connection with their hiring and employment practices and as a basis to take adverse action against job applicants and its employees, all without complying with the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"), and the Investigative Consumer Reporting Agencies Act, California Civil Code § 1786, *et seq*. ("ICRAA"), and California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.1, *et seq*. Plaintiff, individually and on behalf of all others similarly situated, seeks statutory damages, actual damages, compensatory damages, punitive damages, and expenses of this litigation, including reasonable attorneys' fees and costs, due to Defendants' systematic and willful violation of the FCRA, the ICRAA, and the CCRAA.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 15 U.S.C. §1581p. The Court also has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of the Court and Plaintiff is informed and believes that Defendant BANK OF AMERICA, NATIONAL ASSOCIATION ("Bank of America"), at all times mentioned herein has maintained a regional headquarters in San Francisco, California, has transacted business in this judicial district, in County of San Francisco and in the State of California.  Moreover, by doing business in this judicial district and committing the statutory violations alleged herein in this judicial district, Defendants' conduct has had an adverse effect upon the finances of residents of this judicial district.

3.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a) and (c) because as a corporation Defendant is "deemed to reside in any judicial district in which [they are] subject to personal jurisdiction," and because the alleged acts giving rise to the statutory violations alleged herein arose in this judicial district. Further, Plaintiff is informed and believes that Defendant BANK OF AMERICA, NATIONAL ASSOCIATION, keeps and maintains a regional headquarters in San Francisco, California.

## PARTIES

**A.   PLAINTIFF**

4.      Plaintiff Sergio Marquez is an United States citizen and is domiciled in the state of California. In October of 2016, Plaintiff Marquez applied for a position as a Mortgage Loan Officer with the Defendant, Bank of America, N.A., was subject to an investigative consumer report conducted by the Defendant, and was denied employment by Defendant Bank of America, N.A., due to the appearance of a misdemeanor conviction from 1993, which was later dismissed pursuant to Cal. Penal Code §1203.4(a).

**B.   DEFENDANTS**

5.      Defendant Bank of America, N.A., is a National Association ("Bank of America"), registered in Delaware, with its principal place of business located in Charlotte, North Carolina. Further, at all relevant times hereto, Bank of America has done business in California and in this judicial district and Plaintiff is informed and believes that Bank of America keeps a regional headquarters at 555 California Street, San Francisco, California.

6.      Defendant Business Information Group, Inc. ("BIG"), is a Pennsylvania corporation, licensed to do business in the State of California, with its principal place of business located at 156 N. George Street, York, Pennsylvania, 17401. BIG's registered agent for service of process is National Registered Agents, Inc., located at 818 W. 7th Ave, Suite 930, Los Angeles, California 90017. According to its website, https://www.bigreport.com/about/our-history/, "Founded in 1989, BIG has rapidly grown into the premier applicant screening services provider – serving many of the world's largest financial services firms." According to its website, https://www.bigreport.com/about/our-history/, BIG specializes in providing applicant screening services to employers in California and throughout the United States of America.  BIG is identified as one of the "various entities" from whom Bank of America "may obtain consumer reports from."

7.      Defendant TALX Corporation, d/b/a/ Equifax Workforces Solutions ("TALX") is a Missouri corporation, licensed to do business in the State of California, with its principal place of business located in 1550 Peachtree Street, NW, Atlanta, Georgia, 30309. TALX's registered agent for service of process in California is Corporation Service Company Which Will Do Business in the State of California as CSC - Lawyers Incorporating Service, and located at 2710 Gateway Oaks Dr., Suite 150N, Sacramento, California

95833. TALX   is a wholly owned subsidiary of Equifax, Inc., and according to its website, http://www.equifax.com/business/employment-verifications, TALX "bring[s] security to your employment and income verification process with automated, uniform, and secured information release."  TALX is a wholly owned subsidiary of Equifax, Inc., and provides employment screen services to employers in California and throughout the United States of America. Specifically, TALX verifies the prior employment and income of employees and job applicants for employers.  TALX  is identified as one of the "various entities" from whom Bank of America "may obtain consumer reports from."

## CLASS ACTION ALLEGATIONS

8.    Plaintiff brings this action on behalf of himself and all other persons similarly situated pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

9.    Plaintiff is a member of and seeks to certify his claims alleged in his First Claim for Relief on behalf of a class defined as follows:

Bank of America Class:

All persons who applied for a job with Bank of America, N.A. or who was employed by Bank of America, N.A. on or after February 7, 2015, and were the subject of a consumer report used by Bank of America, N.A. for employment purposes.

10.    Plaintiff is a member of and seeks to certify his claims alleged in his Second Claim for Relief on behalf of a class defined as follows:

Bank of America Adverse Action Class:

All persons who applied for a job with Bank of America, N.A. or who was employed by Bank of America, N.A. on or after February 7, 2015, and were the subject of a consumer report used by Bank of America, N.A. for employment purposes, and who were the subject of an adverse employment action by Bank of America, N.A.

11.    Plaintiff is a member of and seeks to certify his claims alleged in his Third and Fifth Claims for Relief on behalf of a class defined as follows:

Bank of America California Subclass:

All persons with California residential addresses who applied for a job with Bank of America, N.A. or who was employed by Bank of America, N.A. on or after February 7, 2015, and were the subject of an investigative consumer report or a consumer credit report used by Bank of America, N.A. for employment purposes.

12.    Plaintiff is a member of and seeks to certify his claims alleged in his Fourth Claim for Relief on behalf of a class defined as follows:

Bank of America California Adverse Action Subclass:

All persons with California residential addresses who applied for a job with Bank of America, N.A. or who was employed by Bank of America, N.A. on or after February 7, 2015, were the subject of an investigative consumer report or a consumer credit report used by Bank of America, N.A. for employment purposes, and who were the subject of an adverse employment action by Bank of America, N.A.

13.     Plaintiff is a member of and seeks to certify his claims alleged in his Sixth and Eighth Claims for Relief on behalf of a class defined as follows:

BIG Class:

All persons who on or after February 7, 2015 were the subject of a consumer report prepared by Business Information Group, Inc. for employment purposes.

14.     Plaintiff is a member of and seeks to certify his claims alleged in his Seventh Claim for Relief on behalf of a class defined as follows:

BIG Antedated Subclass Class:

All persons who were the subject of a consumer report prepared by Business Information Group, Inc. for employment purposes, and whose consumer report included (1) civil suits, civil judgments, and records of arrest that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period; and/or (2) any other adverse item of information, other than records of convictions of crimes, which antedates the report by more than seven years.

15.     Plaintiff is a member of and seeks to certify his claims alleged in his Ninth Claim for Relief on behalf of a class defined as follows:

BIG California Antedated Subclass:

All persons with California residential addresses who on or after February 7, 2015 were the subject of an investigative consumer report or a consumer credit report prepared by Business Information Group, Inc. for employment purposes, and whose consumer report included (1) records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years; (2) a conviction where a full pardon has been granted or, an arrest, indictment, information, or misdemeanor complaint, a conviction did not result; and/or (3) any other adverse information that antedates the report by more than seven years.

16.     Plaintiff is a member of and seeks to certify his claims alleged in his Tenth Claim for Relief on behalf of a class defined as follows:

BIG California Subclass:

All persons with California residential addresses who on or after February 7, 2015 were the subject of an investigative consumer report or a consumer credit report prepared by Business Information Group, Inc. for employment purposes.

17. Plaintiff is a member of and seeks to certify his claims alleged in his Eleventh Claim for Relief on behalf of a class defined as follows:

TALX Class:

All persons who on or after February 7, 2015 were the subject of a consumer report prepared by TALX Corporation, d/b/a/ Equifax Workforces Solutions for employment purposes.

18. Defendants and their shareholders, officers, directors, and managing agents are excluded from the Classes and Subclasses defined above. Plaintiff reserves the right under Rule 23 to amend or modify the class definitions with greater particularity or further division into subclasses or limitation to particular issues as warranted as additional facts are discovery by Plaintiff during his future investigations.

19. Numerosity: Although Plaintiff does not, as yet, know the exact size of class and subclass defined above, based upon the nature of the Defendants' business, Plaintiff believes that there are numerous members of each class and subclass defined above, and that such members are geographically dispersed throughout the state of California. Thus, each class and subclass defined above is sufficiently numerous to make joinder impracticable. The disposition of the claims of the members of each class and subclass defined above through this class action will benefit both the parties and this Court. In addition, each class and subclass defined above is readily identifiable from information and records in the possession of Defendants as well as the members of each class and subclass.

20. Commonality: There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to each class and subclass predominate over questions which may affect individual class and subclass members, including the following:

a. Whether Bank of America requires its employees to sign a disclosure form to obtain background checks on employees and prospective employees;

b. Whether Bank of America's disclosure form complies with the FCRA and the ICRAA;

c. Whether Bank of America obtained consumer report information on employees and prospective employees;

d. Whether Bank of America uses consumer report information to take adverse employment action against employees and prospective employees;

e. Whether BIG and TALX obtain signed disclosure forms prior to preparing and producing background checks for employment purposes;

f. Whether BIG's and TALX's disclosure form complies with the FCRA and the ICRAA;

g. Whether the consumer reports produced by BIG and TALX violate the FCRA and the ICRAA;

h. Whether Defendants' conduct as described herein constitutes violated the FCRA, the ICRAA and/or the CCRAA;

i. Whether Defendants willfully violated the FCRA, the ICRAA and/or the CCRAA;

j. The proper measure of actual, statutory and punitive damages; and

k. The proper measure of reasonable attorneys' fees and costs to be awarded to Plaintiff.

21.    Typicality: Plaintiff's, the classes' and subclass members' claims arise from and were caused by Defendants preparing, furnishing, obtaining and using consumer reports and/or investigative consumer reports (commonly known as and referred to by Defendants as "background reports") on Plaintiff and the members of each class and subclass that failed to provide adequate notice and consent under the FCRA, the ICRAA and the CCRAA, used background reports containing information regarding an arrest or detention that did not result in conviction, or information concerning a referral to, and participation in, any pretrial or posttrial diversion program, or concerning a conviction that has been judicially dismissed or ordered sealed pursuant to law, and that Bank of America used to take adverse action against members of the subclass.  For these violations, Plaintiff and members of each class and subclass seek  actual, loss of wages, statutory or nominal, and punitive damages, injunctive relief, and expenses of litigation including costs and attorneys's fees.

22.    Adequacy: Plaintiff will fairly and adequately protect the interests of each class and subclass since he is a member of each class and subclass he seeks to represent and Plaintiff has no interest that is contrary to or in conflict with those members of each class and subclass he seeks to represent.  Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation involving the FCRA, the ICRAA and the CCRAA violations alleged herein to further ensure such protection and he intends to prosecute this action vigorously.

23.    Superiority:  The prosecution of separate actions by individual members of each class and subclass create a risk of inconsistent or varying adjudications with respect to individual members of each

1  class and subclass, which would establish incompatible standards of conduct for Defendants and could lead

2  to repetitious trials of the numerous common questions of fact and law.  Plaintiff knows of no difficulty that

3  will be encountered in the management of this litigation that would preclude its maintenance as a class

4  action. As a result, a class action is far superior to other available methods for the fair and efficient

5  adjudication of this controversy.

6      24.     Proper and sufficient notice of this action may be provided to each class and subclass through

7  notice by such means as direct mail, electronic mail, publication on the internet, and/or television, radio,

8  and/or print media outlets.

9      25.     Plaintiff and each class and subclass have suffered irreparable harm and damages as a result

10  of Defendants' wrongful conduct as alleged herein, which is ongoing.  Absent a representative action,

11  Plaintiff and each class and subclass continue to be damaged, thereby allowing these violations of law to

12  proceed without remedy, and allowing Defendants to continue their wrongful conduct .

13      26.     In addition, Defendants have acted or refused to act on grounds generally applicable to each

14  member of each class and subclass, thereby making appropriate final classwide injunctive relief with respect

15  to each class and subclass as a whole.

16                              **Common Allegations**

17      27.     The FCRA is Congress' effort to ensure that consumer reporting agencies are required to

18  report information in a manner which is "fair and equitable to the consumer," and "with regard to the

19  confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. §1681(b).

20      28.     To achieve its goals, Congress requires consumer reporting agencies to follow stringent

21  procedures to ensure that whenever criminal history information is reported, it is accurate, complete, and

22  up to date.

23      29.     The accuracy and completeness of the information notwithstanding, Congress has further

24  required employers to provide consumers with notice of their rights under the Act and a copy of their

25  consumer report *prior* to taking any adverse action. This notice is intended to provide applicants with an

26  opportunity to dispute the information reported.

27      30.     Pursuant to 15 U.S.C. § 1681g, consumer reporting agencies are further required, on request,

28  to provide consumers with the full file maintained on the consumer by the reporting agency. The "full file"

1   includes "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The

2   purpose of this requirement is to allow consumers to determine the accuracy of the information set forth in

3   their files and to determine the bases upon which any adverse actions were taken. *See Gillespie v. Trans*

4   *Union Corp.,* 482 F.3d 907 (7th Cir. 2007).

5   31.   In addition, the FCRA also imposes strict regulations prohibiting consumer reporting

6   agencies from reporting obsolete information. Obsolete information includes any adverse information, other

7   than a conviction for a crime, that antedates the report by more than seven years. 15 U.S.C. § 1681c(a)(2)

8   and (5).

9   32.   Lastly, prior to furnishing a consumer report for employment purposes, the consumer

10   reporting agency must obtain a certification from the user that the user will not use the information disclosed

11   in the consumer report to violate any applicable federal or state equal employment opportunity law or

12   regulation. 15 U.S.C. § 1681b(b)(1)(A)(ii).

13   33.   No consumer reporting agency may furnish a consumer report to any person if it has

14   reasonable grounds for believing that the consumer report will not be used for a purpose permitted under

15   the FCRA. 15 U.S.C. §1681e(a).

16   34.   California has enacted two statutes that govern consumer reports. Specifically, the ICRAA

17   covers reports that contain information about "a consumer's character, general reputation, personal

18   characteristics, or mode of living." Civ. Code § 1786.2(c). Meanwhile, the CCRAA covers reports

19   containing "information ... bearing on a consumer's credit worthiness, credit standing, or credit capacity."

20   Civ. Code § 1785.3(c). The ICRAA imposes stricter duties and more severe penalties on persons compiling

21   or requesting reports containing character information than the CCRAA does on those compiling or

22   requesting reports containing creditworthiness, credit standing, or credit capacity information.  The two

23   statutes work together to protect consumers from unfair and harmful reporting tactics. See Cal. Civ. Code

24   §§ 1785.1(b), 1786(b) (declaring that both ICRAA and CCRAA address "a need to insure that [investigative

25   consumer and consumer credit] reporting agencies exercise their grave responsibilities with fairness,

26   impartiality, and a respect for the consumer's right to privacy.").

27   35.   The ICRAA's consumer protections are clearly stated in the ICRAA. All employers who

28

request "investigative consumer reports,"[1] as well as the reporting agencies that prepare them, can easily determine the scope of the ICRAA and comply with its requirements. Where a consumer report triggers the protections of both the ICRAA and the CCRAA, the entity who orders the report can - and must - comply with both acts by meeting the stricter disclosure requirements of the ICRAA.

36. The ICRAA requires employers to identify the name and address of the agency used. Civ. Code, § 1786.16. An employer ordering an investigative report for employment purposes may not procure the report until the applicant has authorized it in writing. Civ. Code, § 1786.16(a)(2). To ensure proper and timely disclosure to consumers, the ICRAA prohibits investigative reporting agencies from even preparing a consumer report until the employer certifies it has made the required disclosures to the consumer and the consumer has been informed of the report. Civ. Code, § 1786.12(e). In the FCRA Disclosure and Authorization provided to Plaintiff, Bank of America does not identify the investigative reporting agencies that it intended on using for Plaintiff's investigative report, rather provided the names and addresses of investigative reporting agencies that it might use.

37. Violation of any of these disclosure provisions subjects an investigative reporting agency - or a employer ordering a report - to potentially significant penalties. The ICRAA establishes a minimum recovery of $10,000 for any consumer harmed by an investigative reporting agency's or a user's violation of its disclosure requirements. Civ. Code, § 1786.50(a). The ICRAA also allows the court to award punitive damages for willful or grossly negligent violation of the statute. Civ. Code, § 1786.50(b). These penalties are intentionally serious, as prior penalties were considered simply "not a sufficient incentive" to insure compliance. (Sen. Jud. Com., Analysis of Sen. Bill No. 1454 (1997-1998 Reg. Sess.) as amended April 27 1998. By mandating "disclosure, disclosure, disclosure[,]" and bolstering its disclosure requirements with significant potential penalties, the ICRAA helps consumers protect themselves and to safeguard their privacy. (Sen. Rules Com., Off. of Sen. Floor Analyses, Bill Analysis, Senate Bill No. 1454 (1997-1998 Reg. Sess.), as amended June 18, 1998, at p. 7; Assem. Com. On Consumer Protection, Governmental Efficiency, and Economic Development, Hearing on Sen. Bill No. 1454 (1997-1998 Reg.

---

[1] The ICRAA defines the term "investigative consumer report" as "a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means." Civ. Code § 1786.2(c).

Sess.) June 23, 1998.

38. Investigative consumer reporting agencies exercise "grave responsibilities" in decision-making that impacts fundamental aspects of a consumer's life and livelihood. Civ. Code § 1786(a), (b)(2). Mistakes in investigative consumer reports can have "a potentially devastating impact on an individual's life." (Assem. Com. On Consumer Protection, Governmental Efficiency, and Economic Development, Hearing on Sen. Bill No. 1454 (1997-1998 Reg. Sess.) June 23, 1998. False information "can plague a victim for years, impeding his or her ability to find or keep a job ...." (Sen. Jud. Com., Analysis of Assem. Bill No. 655 (2001-2002 Reg. Sess.) as amended Aug. 20, 2001, p. 9.)

39. On October 10, 2011, the signing of AB 22 was announced, legislation that added a new provision to the California Labor Code and amends the CCRAA, to restrict the discretion that private and public sector employers have to use "consumer credit reports"[2] for hiring and personnel decisions. Together, the new laws, which took effect on January 1, 2012, limit when employers lawfully can use consumer credit reports and impose notice and disclosure obligations on employers who intend to do so. AB 22 is similar to the laws that were adopted in six states of than California: Hawaii, Washington, Oregon, Illinois, Maryland and Connecticut.

40. Under Labor Code §1024.5, as amended by AB 22, employers are permitted to use "consumer credit reports" only if the individual is applying for or works (or will work) in the following positions: (1) a managerial position (as the term elsewhere is defined by California law); (2) a position in the State Department of Justice; (3) a sworn peace officer or law enforcement position; (4) a position for which the employer is required by law to consider credit history information; (5) a position that affords regular access to bank or credit card account information, Social Security numbers, and dates of birth, provided, however, that the access to this information does not merely involve routine solicitation and processing of credit card applications in a retail establishment; (6) a position where the individual is or will

---

[2] The CCRAA defines a "consumer credit report" as "any written, oral, or other communication of any information by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for: . . . employment purposes...." Civ. Code, § 1785.3(c). AB 22 states that the term consumer credit report "does not include a report that (A) verifies income or employment, and (B) does not include credit-related information, such as credit history, credit score, or credit record."

be a named signatory on the bank or credit card account of the employer and/or authorized to transfer money or authorized to enter into financial contracts on the employer's behalf; (7) a position that affords access to confidential or proprietary information; or (8) a position that affords regular access during the workday to the employer's, a customer's or a client's cash totaling at least $10,000.  Labor Code §1024.5, as amended by AB 22, imposes an additional notice obligation on employers that use consumer credit reports to screen job applicants and employees.  Specifically, before ordering a consumer credit report concerning a job applicant or employee, the employer must notify the individual in writing of the basis under Labor Code §1024.5 for permissibly using the consumer credit report. No such information is provided in the 13 page FCRA Disclosure and Authorization form.

41.     The CCRAA is triggered when an employer orders a consumer credit report from a vendor (commonly known as "consumer reporting agencies") for employment purposes.  The companion statute to the CCRAA, the ICRAA, regulates the use of information other than credit reports, including criminal background reports.  Both statutes generally require: (1) advance consent from the individual to order the credit report; (2) notice to the individual of the intended use of the report; and (3) notice to the individual if the report's contents negatively impact his or her employment opportunities (commonly known as "adverse action letters").

**Plaintiff Sergio Marquez**

42.     Plaintiff Sergio Marquez is a licensed Mortgage Loan Officer, and licensed through the Nationwide Multi-State Licensing System (NMLS) and the State of California as a Mortgage Loan Originator since 2011. For each and every position as a Mortgage Loan Officer, Plaintiff was subject to an investigative consumer report and background check, including one by the Federal Bureau of Investigation. In order to be a licensed Mortgage Loan Officer with the State of California, Mr. Marquez was also required to undergo a criminal background check, as well as participate in annual continuing education through the NMLS.

**Bank of America**

43.     In October of 2016, Plaintiff was recruited to work for Bank of America, and received a job offer from Bank of America, before he filled out an employment application.

44.     Pursuant to Bank of America's job offer to Plaintiff, Plaintiff was to receive $5,000 per

month (or a $60,000 per year) in salary, plus commissions, and other benefits.  At the time of Bank of America's job offer, Plaintiff employed in non-salaried, commission only position with Wells Fargo, N.A., and was earning approximately $5,000 per month (or a $60,000 per year) in commissions.

45.     After receiving Bank of America's job offer, Plaintiff (like all other members of the Bank of America Class, the Bank of America Adverse Action Class, the Bank of America California Subclass, and the Bank of America California Adverse Action Subclass) was required to complete an online job application, which included a disclosure form entitled "FCRA Disclosure and Authorization" that purported to obtain Plaintiff's, the Bank of America Class', and the Bank of America California Adverse Action Subclass' consent to obtain "one or more consumer reports as defined in the Fair Credit Reporting Act" and a consumer credit report , from "various entities including, but not limited to: • Equifax Workforce Solutions, a/k/a TALX Corporation, 11432 Lackland, St. Louis, MO. 63146, Telephone (800) 367-2884.... • Business Information Group, Inc. (BIG), P.O. Box 541, Southampton, PA, 18966, Telephone (800) 260-1680.

46.     The disclosure form itself contained extraneous information including state law disclosures (California and other states).  Thus, the disclosure form does not consist solely of a disclosure by such the inclusion of extraneous information in the disclosure form, constituting a violation of the FRCA and the ICRAA.

47.     The disclosure form itself also contains a waiver of rights in violation of both the FCRA and the ICRAA: "By signing below, you: .... 2. Agree, ..., that notices, documents and communications ... will meet the requirements set forth under Federal and/or State law ....".  Thus, the disclosure form does not consist solely of a disclosure by such inclusion of the waiver, constituting a violation of the FRCA and the ICRAA.

48.     Thus, based upon its written policy and practice, Bank of America obtained consent from Plaintiff and other members of the Bank of America Class and the Bank of America California Subclass using the disclosure form that was not provided in a separate document consisting solely of the disclosure, which violates both the FCRA and the ICRAA, and that contained a waiver of rights, which violates both the FCRA and the ICRAA.  Bank of America's policy and practice was willful as its policy and practice violates the plain language of the FCRA and the ICRAA, and flies in the face of unambiguous case law and

1    regulatory guidance from the FTC. *See*, *e.g.*, *Syed v. M-I, LLC*, 846 F.3d 1034, 1041 (9th Cir. 2017) ("M-I

2    violated the FCRA by including a liability waiver on the same document as its disclosure .... We conclude

3    that the inclusion of the liability waiver did violate the FCRA"); *E.E.O.C. v. Video Only, Inc.*, No. 06-1362,

4    2008 WL 2433841, at *11 (D.Or. June 11, 2008) ("I grant summary judgment of liability that Video Only

5    violated . . . 15 § 1681b(b)(2)(A)(I). This section provides that at any time before the report is procured, a

6    disclosure is made in a document that consists solely of the disclosure that a consumer report may be

7    obtained for employment purposes. Video Only disclosed this possibility as part of its job application, which

8    is not a document consisting solely of the disclosure."); <u>Exhibit</u> 1 ("The disclosure may not be part of an

9    employment application . . . . A disclosure that is combined with many items in an employment application

10   -- no matter how 'prominently' it appears -- is not 'in a document that consists solely of the disclosure' as

11   required by[1681b(b)(2)(A)]."); and <u>Exhibit</u> 2 at 51 ("The disclosure cannot be part of a printed employment

12   application.").

13   49.    Based on the disclosure form signed by Plaintiff and the other members of the Bank of

14   America Class, the Bank of America Adverse Action Class, the Bank of America California Subclass, and

15   the Bank of America California Adverse Action Subclass, Bank of America obtained consumer reports that

16   fall within the definition of a consumer report set forth in 15 U.S.C. § 1681a(d) and within the definition

17   of "investigative consumer reports" set forth in Civil Code §1786.2(c) on Plaintiff and the other members

18   of the Bank of America Class, the Bank of America Adverse Action Class, the Bank of America California

19   Subclass, and the Bank of America California Adverse Action Subclass from BIG for employment purposes.

20   50.    Based on the disclosure form signed by Plaintiff and the other members of the Bank of

21   America Class, the Bank of America Adverse Action Class, the Bank of America California Subclass, and

22   the Bank of America California Adverse Action Subclass, Bank of America obtained consumer reports that

23   fall within the definition of a consumer report set forth in 15 U.S.C. § 1681a(d) and "credit reports" as

24   defined by Civil Code §1785.3(c) on Plaintiff and the other members of the Bank of America Class, the

25   Bank of America Adverse Action Class, the Bank of America California Subclass, and the Bank of America

26   California Adverse Action Subclass from TALX for employment purposes.

27   51.    Bank of America sent Plaintiff a letter dated November 30, 2016 stating that "the background

28   check results we obtained revealed information that may make you ineligible for the position you applied

1   for," and "are writing to inform you that we are unable to continue the hiring process at this time."

2      52.   Neither Bank of America's letter to Plaintiff dated November 30, 2016, nor did Bank of

3   America at time thereafter, identify BIG as entity that Bank of America obtained the consumer report from

4   required by the ICRAA.

5      53.   Neither Bank of America's letter to Plaintiff dated November 30, 2016 enclose, nor did Bank

6   of America at time thereafter, send a copy of consumer report that Bank of America obtained from BIG to

7   Plaintiff as required by the FCRA.

8      54.   Neither Bank of America's letter to Plaintiff dated November 30, 2016 enclose, nor did Bank

9   of America at time thereafter, send a summary of rights under the FCRA as required by the FCRA.

10      55.   Bank of America's letter to Plaintiff dated November 30, 2016 further stated that "if you are

11   able to clear or correct the record or show documentation that it has been cleared or corrected at a later time,

12   you may re-apply for employment with Bank of America." Thus, Bank of America did not provide Plaintiff

13   with a reasonable time before taking an adverse employment action against him as required by the FCRA.

14      56.   Thus, based upon its written policy and practice, Bank of America did not provide Plaintiff

15   and the other members of the Bank of America Adverse Action Class, and the Bank of America California

16   Adverse Action Subclass with the identity of who prepared the consumer report as required by the ICRAA,

17   a copy of the consumer report as required by the FCRA, a summary of his rights under the FCRA as

18   required by the FCRA, or a reasonable time before taking an adverse employment action against him as

19   required by the FCRA and the ICRAA.

20      57.   At all relevant times, Bank of America was aware and has knowledge of the requirements

21   of the FCRA, the ICRAA and the CCRAA.

22      58.   Since 2007, as reported on PACER, Bank of America has faced nearly 600 separate lawsuits

23   alleging that it failed to comply with the FCRA and other consumer credit statutes.

24      59.   With its knowledge of the requirements of the FCRA, the ICRAA and the CCRAA, the prior

25   lawsuits alleged against it for failing to comply with the FCRA and other consumer credit statutes, and its

26   repeated use of the disclosure form to procure consumer reports and consumer credit reports, Bank of

27   America's violations of the FCRA, the ICRAA and the CCRAA as alleged herein were willful.

28   **Business Information Group, Inc.**

60.   At all relevant times, BIG has had a contract with Bank of America and other employers in California and throughout the United States of America to provide consumer reports as defined by 15 U.S.C. § 1681a(d) and within the definition of "investigative consumer reports" set forth in Civil Code §1786.2(c) for employment purposes.

61.   Plaintiff (like all other members of the BIG Class, BIG Antedated Subclass Class, BIG California Antedated Subclass, and the BIG California Subclass) completed a disclosure form entitled "FCRA Disclosure and Authorization" that purported to obtain Plaintiff's, BIG Class', and the BIG California Subclass' consent to obtain "one or more consumer reports as defined in the Fair Credit Reporting Act" and a consumer credit report , from "various entities including, but not limited to: • Equifax Workforce Solutions, a/k/a TALX Corporation, 11432 Lackland, St. Louis, MO. 63146, Telephone (800) 367-2884.... • Business Information Group, Inc. (BIG), P.O. Box 541, Southampton, PA, 18966, Telephone (800) 260-1680.

62.   The disclosure form itself contained extraneous information including state law disclosures (California and other states).  Thus, the disclosure form does not consist solely of a disclosure by such the inclusion of extraneous information in the disclosure form, constituting a violation of the FRCA and the ICRAA.

63.   The disclosure form itself also contains a waiver of rights in violation of both the FCRA and the ICRAA: "By signing below, you: .... 2. Agree, ..., that notices, documents and communications ... will meet the requirements set forth under Federal and/or State law ....".  Thus, the disclosure form does not consist solely of a disclosure by such inclusion of the waiver, constituting a violation of the FRCA and the ICRAA.

64.   Based on all the relevant case law, the disclosure form violate the FRCA because it include a waiver[3] and is deemed willful as a matter of law.[4]

---

[3] *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017); See *Moody v. Ascenda USA*, 2016 WL 4702681 (S.D. Fla. July 1, 2016) (holding that inclusion of a waiver in an authorization and disclosure form violates 15 U.S.C. 15 U.S.C. § 1681b(b)(2)(A)) ("the Court will align itself with the district courts that have held that inclusion of a waiver within the disclosure document is sufficient to state a violation of § 1681b(b)(2)(A)(i)."); See *Milbourne v. JRK Residential Am., LLC*, 92 F.Supp.3d 425, 433 (E.D. Va. 2015) (holding that the inclusion of a waiver within a document containing the disclosure would violate 15 U.S.C. § 1681b(b)(2)(A)) ("[A]lthough the policy goal of the FCRA may have been to secure clear disclosures to consumers, it does

65.     Thus, based upon its agreements with its customers, BIG prepared and provided consumer reports that fall within the definition of a consumer report set forth in 15 U.S.C. § 1681a(d) and within the definition of "investigative consumer reports" set forth in Civil Code §1786.2(c) on Plaintiff and the other members of the BIG Class, BIG Antedated Subclass Class, BIG California Antedated Subclass, and the BIG California Subclass for employment purposes to Bank of America and other employers based on the disclosure form signed by Plaintiff and the other members of the BIG Class, BIG Antedated Subclass Class, BIG California Antedated Subclass, and the BIG California Subclass.

66.     Between October 29, 2016 and November 30, 2016, BIG prepared a consumer report on Plaintiff Sergio Marquez and provided it to the Bank of America.

67.     BIG's consumer report on Plaintiff Sergio Marquez included two misdemeanor convictions from 1993 dismissed under Penal Code § 1203.4 in violation of the ICRAA.

68.     BIG's consumer report on Plaintiff Sergio Marquez also included an arrest that did not result in a conviction in violation of the FCRA and the ICRAA.

---

so in part by including language that requires the disclosure to be in its own separate document."); *Reardon v. Closetmaid Corp.*, 2013 WL 6231606 at *10-11 (W.D. Pa. Dec. 2, 2013) (holding that a disclosure with a liability waiver was contrary to the statute); *E.E.O.C. v. Video Only, Inc.*, 2008 WL 2433841 at *11 (D. Or. June 11, 2008) (granting summary judgment against the defendant employer who made a disclosure as a part of the job application, which is not a document consisting solely of the disclosure); *Speer v. Whole Food Mkt. Group, Inc*., 2015 WL 1456981, at *3 (M.D. Fla. Mar. 30, 2015) (denying a motion to dismiss since the inclusion of a waiver and release in a disclosure form sufficiently stated a claim for relief).

[4]  Notably, the Ninth Circuit and the District Court were hardly the first Courts to make this determination. See *Moody v. Ascenda USA*, 2016 WL 4702681 (S.D. Fla. July 1, 2016) (holding that inclusion of a waiver in an authorization and disclosure form violates 15 U.S.C. § 1681b(b)(2)(A)) ("the Court will align itself with the district courts that have held that inclusion of a waiver within the disclosure document is sufficient to state a violation of § 1681b(b)(2)(A)(i).");  See *Milbourne v. JRK Residential Am., LLC*, 92 F.Supp.3d 425, 433 (E.D. Va. 2015) (holding that the inclusion of a waiver within a document containing the disclosure would violate 15 U.S.C. § 1681b(b)(2)(A)) ("[A]lthough the policy goal of the FCRA may have been to secure clear disclosures to consumers, it does so in part by including language that requires the disclosure to be in its own separate document."); *Reardon v. Closetmaid Corp*., 2013 WL 6231606 at *10-11 (W.D. Pa. Dec. 2, 2013) (holding that a disclosure with a liability waiver was contrary to the statute); *E.E.O.C. v. Video Only, Inc.*, 2008 WL 2433841 at *11 (D. Or. June 11, 2008) (granting summary judgment against the defendant employer who made a disclosure as a part of the job application, which is not a document consisting solely of the disclosure); *Speer v. Whole Food Mkt. Group, Inc*., 2015 WL 1456981, at *3 (M.D. Fla. Mar. 30, 2015) (denying a motion to dismiss since the inclusion of a waiver and release in a disclosure form sufficiently stated a claim for relief).

69. BIG's consumer report on Plaintiff Sergio Marquez also did not include a summary of consumer's rights under the FCRA in violation of the FCRA.

70. At all relevant times, BIG was aware and has knowledge of the requirements of the FCRA and the ICRAA.

71. Since 2009, as reported on PACER, BIG has faced five separate lawsuits alleging that it failed to comply with the FCRA.

72. With its knowledge of the requirements of the FCRA and the ICRAA, the prior lawsuits alleged against it for failing to comply with the FCRA and other consumer credit statutes, and its repeated use of the disclosure form to prepare and provided consumer reports, BIG's violations of the FCRA and the ICRAA as alleged herein were willful.

### Equifax Workforce Solutions, a/k/a TALX Corporation

73. At all relevant times, TALX has had a contract with Bank of America and other employers in California and throughout the United States of America to provide consumer reports as defined by 15 U.S.C. § 1681a(d) and "credit reports" as defined by Civil Code §1785.3(c) for employment purposes.

74. Plaintiff (like all other members of the TALX Class) completed a disclosure form entitled "FCRA Disclosure and Authorization" that purported to obtain Plaintiff's, the TALX Class' consent to obtain "one or more consumer reports as defined in the Fair Credit Reporting Act" and a consumer credit report , from "various entities including, but not limited to: • Equifax Workforce Solutions, a/k/a TALX Corporation, 11432 Lackland, St. Louis, MO. 63146, Telephone (800) 367-2884.... • Business Information Group, Inc. (BIG), P.O. Box 541, Southampton, PA, 18966, Telephone (800) 260-1680.

75. The disclosure form itself contained extraneous information including state law disclosures (California and other states).  Thus, the disclosure form does not consist solely of a disclosure by such the inclusion of extraneous information in the disclosure form, constituting a violation of the FCRA.

76. The disclosure form itself also contains a waiver of rights in violation of both the FCRA: "By signing below, you: .... 2. Agree, ..., that notices, documents and communications ... will meet the requirements set forth under Federal and/or State law ....".  Thus, the disclosure form does not consist solely of a disclosure by such inclusion of the waiver, constituting a violation of the FRCA.

77. Based on the disclosure form signed by Plaintiff and the other members of the TALX Class,

TALX prepared and provided Bank of America and other employers with "credit reports" as defined by Civil Code §1785.3(c) on Plaintiff and the other members of the TALX Class from TALX for employment purposes.

78.     Thus, based upon its agreements with its customers, TALX prepared and provided consumer reports that fall within the definition of a consumer report set forth in 15 U.S.C. § 1681a(d) and "credit reports" as defined by Civil Code §1785.3(c) on Plaintiff and the other members of the TALX Class for employment purposes to Bank of America and other employers based on the disclosure form signed by Plaintiff and the other members of the TALX Class.

79.     Between October 29, 2016 and November 30, 2016, TALX prepared a consumer report on Plaintiff Sergio Marquez and provided it to the Bank of America.

80.     TALX's consumer report on Plaintiff Sergio Marquez also included an arrest that did not result in a conviction in violation of the FCRA.

81.     TALX's consumer report on Plaintiff Sergio Marquez also did not include a summary of consumer's rights under the FCRA in violation of the FCRA.

82.     At all relevant times, TALX was aware and has knowledge of the requirements of the FCRA.

83.     In 2014, as reported on PACER, TALX was sued for failing to comply with the FCRA.

84.     With its knowledge of the requirements of the FCRA, the prior lawsuits alleged against it for failing to comply with the FCRA and other consumer credit statutes, and its repeated use of the disclosure form to prepare and provided consumer reports, TALX's violations of the FCRA as alleged herein were willful.

**FIRST CLAIM FOR RELIEF**
**For Violation of the Federal Credit Reporting Act**
**(Violation of 15 U.S.C. §§ 1681b(b)(2)(A)(I))**
**(On Behalf of Plaintiff and Bank of America Class against Defendant Bank of America)**

85.     Plaintiff alleges and incorporates by this reference the allegations in all preceding paragraphs.

86.     Bank of America is a "person" as defined by 15 U.S.C § 1681a(b) of the FCRA. Bank of America obtained and used consumer reports of its employees and job applicants for employment purposes. Plaintiff and the Background Check Class are "consumers" as defined by 15 U.S.C § 1681a(c) because they are individuals. At all relevant times, Plaintiff and the Bank of America Class members were applicants for

employment with Defendants.

87.    15 U.S.C. § 1681b(b)(2)(A)(I) provides that a person may not procure a consumer report for employment purposes unless the person provides the applicant with a "clear and conspicuous" disclosure "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(I). The Ninth Circuit recently held that "the FCRA unambiguously bars a prospective employer from including a liability waiver on a disclosure document provided a job applicant pursuant to Section 1681b(b)(2)(A)." *Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017).

88.    The Disclosure Statement form that given to Plaintiff and all other members of the Bank of America Class by Bank of America to sign and signed by Plaintiff and all other Bank of America Class members contain a liability waiver.  By including a liability waiver in its Disclosure Form, Bank of America violated 15 U.S.C. § 1681b(b)(2)(A)(I) by not providing Plaintiff  and the other members of the Bank of America Class with a "clear and conspicuous" disclosure "in a document that consists solely of the disclosure." And, because subsection (I) is "not subject to a range of plausible interpretations," an employer who includes a liability waiver on a disclosure document willfully violates that provision "as a matter of law," regardless of their subjective interpretation of the statute.  *Syed v. M-I, LLC*, 853 F.3d at 505.

89.    At all relevant times, Bank of America had a policy and practice to obtain consumer report from the Bank of America Class using a Disclosure Statement that contained a liability waiver, and was part of a 13 page document containing extraneous information such as Bank of America's employment policies, thereby failing to provide the Bank of America Class  a separate document that consisting solely of the disclosure in violation of 15 U.S.C. § 1681b(b)(2)(A)(I).

90.    Pursuant to 15 U.S.C. § 1681b(b)(2), Plaintiff and the other members of the Bank of America Class were entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure. Such a disclosure was required to be provided to Plaintiff and the other members of the Bank of America Class before the consumer reports were to be procured. By depriving Plaintiff and the other members of the Bank of America Class of this information, Bank of America injured Plaintiff  and the other members of the Bank of America Class. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

91.     Bank of America violated the FCRA by procuring as defined by 15 U.S.C. § 1681a(d) on Plaintiffs and the Bank of America Class without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(I). Namely, these disclosures had to be made: (1) before Bank of America actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and the other members of the Bank of America Class that Bank of America might procure a consumer report on each of them for purposes of employment.

92.     Second, Bank of America invaded the right of privacy of Plaintiff and the Bank of America Class. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (i.e., disclosure and authorization) set forth in the following subsections: 15 U.S.C. § 1681b(b)(2). As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A., Inc.*, 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015).

93.     The consumer reports of Plaintiff and the other members of the Bank of America Class contained a wealth of private information which Bank of America had no right to access under the FCRA. The consumer reports of Plaintiff and the other members of the Bank of America Class contained included, *inter alia*, contain information regarding arrests that did not result in conviction, and for misdemeanor convictions that antedate the consumer report by more than seven years, in violation of the FCRA. By procuring consumer reports containing this private information without complying with the FCRA's disclosure requirements, Bank of America illegally invaded Plaintiff's right to privacy, as well as the right of privacy of the other members of the Bank of America Class.

94.     Bank of America's conduct in violation of 15 U.S.C. §§ 1681b(b)(2)(A) was and is willful. Bank of America acted in deliberate or reckless disregard of its obligations and the rights of its employees and job applicants, including Plaintiff and the other members of the Bank of America Class. The foregoing violations were willful. Bank of America knew or recklessly disregarded the fact that the Disclosure Statement must be a stand-alone form (separate from the employment application), and should not include items not strictly required by the FCRA. Bank of America acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other members of the Bank of America Class under 15 U.S.C.

§ 1681b(b)(2)(A)(I). Bank of America's willful conduct is reflected by, among other things, the following facts:

a. Bank of America is a corporation with access to legal advice through outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

b. Bank of America knew or had reason to know that its conduct was inconsistent with published FTC guidance and case law interpreting the FCRA and the plain language of the statute;

c. Bank of America voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

d. Bank of America has faced allegations that it violated the FCRA in over 500 lawsuits since 2007;

e. because subsection (I) is not subject to a range of plausible interpretations, Bank of America who includes a liability waiver in its Disclosure Statement willfully violates that provision as a matter of law, regardless of their subjective interpretation of the statute.

95.      As a result of such conduct, Plaintiff and the other members of the Bank of America Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. §1681n(a)(1)(A).

96.      As a result of such conduct, Plaintiff and the other members of the Bank of America Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

97.      As a result of such conduct, Plaintiff and the other members of the Bank of America Class are further entitled to recover their attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

**SECOND CLAIM FOR RELIEF**
**For Violation of the Federal Credit Reporting Act**
**(Violation of 15 U.S.C. § 1681b(b)(3)(A) and 15 U.S.C. § 1681m)**
**(On Behalf of Plaintiff and Bank of America Adverse Action Class Against**
**Defendant Bank of America)**

98.      Plaintiff alleges and incorporates by this reference the allegations in all preceding paragraphs.

99.      Plaintiff and the Bank of America Adverse Action Class members are each a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

100.     Bank of America is a "person," as defined by 15 U.S.C. § 1681a(b) of the FCRA, that regularly uses consumer reports for employment purposes.

101.    Bank of America has used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and the other members of the Bank of America Adverse Action Class.

102.    Bank of America violated the FCRA by failing to provide Plaintiff and the other members of the Bank of America Adverse Action Class with a copy of the consumer report that was used to take adverse employment action against them and a summary of their rights under the FCRA. See 15 U.S.C. § 1681b(b)(3)(A).

103.    The foregoing violations were willful. Bank of America acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other members of the Bank of America Adverse Action Class under 15 U.S.C. § 1681b(b)(3)(A).

104.    The FCRA requires Bank of America, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the consumer reports, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA. 15 U.S.C. § 1681b(b)(3)(A)(I), (ii).

105.    Bank of America negligently and/or willfully violated section 1681b(b)(3) of the FCRA by failing to provide to Plaintiff and the Bank of America Adverse Action Class about whom the report relates a copy of the report and a written description of the consumer's rights under the FCRA a sufficient time before it took adverse action based in whole or in part on the consumer report.

106.    Pursuant to 15 U.S.C. §§  1681n and 1681o of the FCRA, Bank of America is liable for negligently and/or willfully violating 15 U.S.C. § 1681b(b)(3) by failing to provide to the consumer about whom the report relates a copy of the report and a written description of the consumer's rights under the FCRA a sufficient time before it took adverse action against Plaintiff and each Bank of America Adverse Action Class member  based in whole or in part on the consumer report.

107.    As a result of such conduct, Plaintiff and the other members of the Bank of America Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. §1681n(a)(1)(A).

108.    As a result of such conduct, Plaintiff and the other members of the Bank of America Adverse Action Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

109.     As a result of such conduct, Plaintiff and the other members of the Bank of America Adverse Action Class are further entitled to recover their attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

### THIRD CLAIM FOR RELIEF
**For Violation of the Investigative Consumer Reporting Agencies Act**
**(Violation of California Civil Code 1786, et seq.)**
**(On Behalf of the Plaintiff and Bank of America California Subclass Against**
**Defendant Bank of America)**

110.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

111.     At all relevant times, Plaintiff and the Bank of America California Subclass members were consumers as that term is defined in Civil Code § 1786.2(b), and Bank of America is a  person as that term is defined in Civil Code § 1786.2(a) and procured or cause to be prepared an investigative consumer report as that term is defined in Civil Code § 1786.2(c) on Plaintiff and the Bank of America California Subclass for employment purposes under Civil Code § 1786.12(d)(1) without meeting the following applicable conditions required by Civil Code § 1786.16(a)(2).

112.     Specifically, Bank of America violated Civil Code § 1786.16(a)(2)(B) because they failed to provide Plaintiff and the Bank of America California Subclass  a "clear and conspicuous" disclosure in a writing before the report was procured or caused to be made in a document that consists solely of the disclosure, and that (1) the disclosure provided to Plaintiff and the Bank of America California Subclass Members contained a waiver of rights; (2) did not state the permissible purpose of the report under Labor Code §1024.5; and (3) did not identify the name and address of the investigative consumer reporting agency conducting the investigation.

113.     Bank of America was grossly negligent in violating or willfully violated the ICRAA by acting without a good faith, reasonable belief in the legality of their actions, and/or in deliberate or reckless disregard of their legal obligations and the rights of Plaintiff and the Bank of America Bank of America California Subclass  under the statute.

114.     Plaintiff and the Bank of America California Subclass  have been damaged by these violations and seek the following relief pursuant to pursuant to Civil Code § 1786.50:

a.      Any actual damages sustained by the consumer as a result of the failure or, ten thousand

1        dollars ($10,000), whichever sum is greater;

2      b.     the costs of the action together with reasonable attorney's fees as determined by the court;

3        and

4      c.     In the case of a violation that was grossly negligent or willful, punitive damages.

5

**FOURTH CLAIM FOR RELIEF**
**For Violation of the Investigative Consumer Reporting Agencies Act**
**(Violation of California Civil Code 1786, et seq.)**
**(On Behalf of the Plaintiff and Bank of America California Adverse Action Subclass Against**
**Defendant Bank of America)**

6

7

8      115.    Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs

9 above as if fully set forth herein.

10      116.    At all relevant times, Plaintiff and the Bank of America California Adverse Subclass

11 members were consumers as that term is defined in Civil Code § 1786.2(b), and Bank of America is a

12 person as that term is defined in Civil Code § 1786.2(a) and procured or cause to be prepared an

13 investigative consumer report as that term is defined in Civil Code § 1786.2(c) on Plaintiff and the Bank

14 of America California Adverse Action Subclass for employment purposes under Civil Code § 1786.12(d)(1)

15 and failed to comply with the necessary notification procedures required by the ICRAA prior to taking

16 adverse action.

17      117.    In violation of Civil Code § 1786.40, Bank of America  failed to provide Plaintiff and

18 members of the Bank of America California Adverse Action Subclass with the name and address of the

19 investigative consumer reporting agency that performed the investigative consumer report.

20      118.    Bank of America was grossly negligent in violating or willfully violated the ICRAA by

21 acting without a good faith, reasonable belief in the legality of their actions, and/or in deliberate or reckless

22 disregard of their legal obligations and the rights of Plaintiff and the Bank of America Bank of America

23 California Adverse Action Subclass under the statute.

24      119.    Plaintiff and the Bank of America California Adverse Action Subclass  have been damaged

25 by these violations and seek the following relief pursuant to pursuant to Civil Code § 1786.50:

26      a.     Any actual damages sustained by the consumer as a result of the failure or, ten thousand

27          dollars ($10,000), whichever sum is greater;

28      b.     the costs of the action together with reasonable attorney's fees as determined by the court;

1      and

2      c.      In the case of a violation that was grossly negligent or willful, punitive damages.

3

4      **FIFTH CLAIM FOR RELIEF**
**For Violation of the California Consumer Credit Reporting Agencies Act**
**(Violation of California Civil Code § 1785.1 *et seq.*)**

5      **(On Behalf of the Plaintiff and the Bank of America California Subclass against Bank of America)**

6      120.    Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs

7      above as if fully set forth herein.

8      121.    Bank of America used a "consumer credit report" as defined in California Civil Code §

9      1785.3 to make a determination of employment for Plaintiff and other members of the Bank of America

10     California Subclass.

11     122.    Defendant violated California Civil Code § 1785.20.5 of CCRAA, by failing to provide

12     written notice to Plaintiff and the other members of the Bank of America California Subclass prior to

13     requesting such consumer reports that complied with California Civil Code § 1785.20.5 by failing to inform

14     them of the specific basis under Labor Code § 1024.5 for the use of the reports, to inform them of the source

15     of the reports, and to include a box that they could check off to receive copies of such reports.

16     123.    Bank of America willfully violated California Civil Code § 1785.20.5 by acting in deliberate

17     or reckless disregard of their obligations and the rights of Plaintiff and other members of the Bank of

18     America California Subclass.

19     124.    Plaintiff seeks statutory damages for herself and all others similarly situated for these

20     violations pursuant to California Civil Code § 1785.31:

21     a.      In the case of a negligent violation, actual damages, including court costs, loss of wages,

22             attorney's fees;

23     b.      In the case of a willful violation, actual damages, including court costs, loss of wages,

24             attorney's fees, and punitive damages of not less than one hundred dollars ($100) nor more

25             than five thousand dollars ($5,000) for each violation as the court deems proper;

26     c.      Injunctive relief; and

27     d.      Any other relief that the court deems proper.

28     **SIXTH CLAIM FOR RELIEF**

**For Violation of the Federal Credit Reporting Act**
**Conducting Background Checks Without Proper Certification**
**(Violation of 15 U.S.C. § 1681b(b)(1)(A))**
**(on behalf of the Plaintiff, the BIG Class against Defendants BIG)**

125.    Plaintiff realleges and incorporates by this reference all preceding paragraphs.

126.    In return for money, BIG prepared and provided consumer reports on Plaintiff and the members of the BIG Class to Bank of America and other third-parties for employment purposes.

127.    As such, BIG is a "consumer reporting agency," as defined by 15 U.S.C. §1681a(f), which defines a consumer reporting agency as, " any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

128.    As a consumer reporting agency, BIG had an affirmative duty to insure that its customers complied with the FCRA. 15 U.S.C. §1681b(b)(1)(A)(I) requires that BIG, as a consumer reporting agency, may only furnish a consumer report for employment purposes if, " the person who obtains such report from the agency certifies to the agency that (I) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable."

129.    15 U.S.C. § 1681b(b)(2)(A)(I) provides that a person may not procure a consumer report for employment purposes unless the person provides the applicant with a "clear and conspicuous" disclosure "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(I).  This practice violates the plain language of the statute, and flies in the face of unambiguous case law and regulatory guidance from the FTC. See, e.g., *E.E.O.C. v. Video Only, Inc*., No. 06-1362, 2008 WL 2433841, at *11 (D.Or. June 11, 2008) ("I grant summary judgment of liability that Video Only violated . . . 15 § 1681b(b)(2)(A)(I). This section provides that at any time before the report is procured, a disclosure is made in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes. Video Only disclosed this possibility as part of its job application, which is not a document consisting solely of the disclosure.")

130.   BIG violated 15 U.S.C. § 1681b(b)(1)(A) by furnishing consumer reports as defined by 15 U.S.C. § 1681a(d) regarding Plaintiff and the other members of the BIG Class for employment purposes to Bank of America and its other customers without first obtaining from Bank of America and its other customers to whom they furnished such reports a certification by such person as to each consumer report it furnished to such person that such person "has complied with paragraph (2) [of Section 1681b(b)] with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) [of Section 1681b(b)] becomes applicable."

131.   BIG knew or should have known about their legal obligations under the FCRA. The language of 15 U.S.C. § 1681b(b)(1)(A)(I) is plain and clearly ascertainable. By failing to obtain the required specific certification from Bank of America and other persons to whom Defendants furnished consumer reports as to each consumer report provided before providing the specific consumer report that was the subject of the certification, BIG violated the express requirement of 15 U.S.C. § 1681b(b)(1)(A)(I).

132.   BIG knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission. BIG obtained or had available substantial written materials which apprised them of their duties under the FCRA. Any reasonable consumer reporting agency knows about or can easily discover these obligations.

133.   Despite knowing of these legal obligations, BIG intentionally or recklessly acted consciously in breaching their known duties and depriving Plaintiff and other BIG Class members their rights under the FCRA. Plaintiff believes that BIG did not obtain proper and valid certifications before providing consumer reports to those persons to whom they were provided because BIG did not want to incur the expenses associated with obtaining such certifications as to each consumer as to whom a consumer report was generated and provided by BIG. Moreover, BIG knew or should have known that the Disclosure Statement form used by Bank of America and its other customers did not comply with 15 U.S.C. §1681b(b)(2)(A), and thus, even if BIG received blanket prospective certification from its customers, they knew or should have known that the certification was false.

134.   The foregoing violations were willful. BIG acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other members of the members of the BIG Class under 15

1    U.S.C. §§ 1681b(b)(1)(A)(I). Their willful conduct is reflected by, inter alia, the following:

2        a. The FCRA was enacted in 1970; BIG has been providing consumer reports for over

3        twenty-five years, and has had that time to become compliant;

4        b. BIG is a corporation which specializes in furnishing consumer reports for employment

5        purposes and has access to legal advice through its outside employment counsel. Yet, there

6        is no contemporaneous evidence that BIG determined that its conduct was lawful;

7        c. BIG's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial

8        interpretation, and the plain language of the statute;

9        d. BIG has faced five separate lawsuits alleging that it has failed to comply with the FCRA;

10        and,

11        e. BIG's similarly situated competitors have adopted policies of ensuring that their customers

12        use Disclosure forms that comply with the FCRA.

13        135.    As a result of such conduct, Plaintiff and the other members of the members of the BIG Class

14    are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of

15    these violations pursuant to 15 U.S.C. §1681n(a)(1)(A).

16        136.    As a result of such conduct, Plaintiff and the other members of the members of the BIG Class

17    are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. §

18    1681n(a)(2).

19        137.    As a result of such conduct, Plaintiff and the other members of the members of the BIG Class

20    are further entitled to recover their attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

21        **SEVENTH CLAIM FOR RELIEF**
        **For Violation of the Federal Credit Reporting Act**

22        **Reporting Antedated Charges**
        **(Violation of 15 U.S.C. § 1681c(a)(2) and (5))**

23        **(On Behalf of the Plaintiff and the BIG Antedated Subclass against Defendant BIG)**

24        138    Plaintiff hereby incorporates by this reference each and every preceding paragraph of this

25    Complaint as if fully set forth herein.

26        139.    In return for money, BIG furnished consumer reports on Plaintiff and other BIG Antedated

27    Subclass members, to third-parties for employment purposes.

28        140.    The consumer reports included (1) civil suits, civil judgments, and records of arrest that, from

1  date of entry, antedate the report by more than seven years or until the governing statute of limitations has

2  expired, whichever is the longer period; and/or (2) any other adverse item of information, other than records

3  of convictions of crimes, which antedates the report by more than seven years.

4      141    The foregoing violations were willful.  BIG acted in deliberate or reckless disregard of its

5  obligations and the rights of Plaintiff and other BIG Class members under 15 U.S.C. §§ 1681c(a)(2) and

6  1681c(a)(5).

7      142.    Plaintiff Marquez and the BIG Antedated Subclass members are entitled to statutory damages

8  of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15

9  U.S.C. §1681n(a)(1)(A).

10      143.    Plaintiff and the BIG Antedated Subclass members are entitled to such amount of punitive

11  damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

12      144.    Plaintiff and the BIG Antedated Subclass Class members are further entitled to recover their

13  costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

14                   **EIGHTH CLAIM FOR RELIEF**
        **For Violation of the Federal Credit Reporting Act**

15              **Failing to Provide a Summary of Rights**
          **(Violation of 15 U.S.C. § 1681b(b)(1)(B))**

16  **(On Behalf of Plaintiff and the BIG Class against Defendant BIG)**

17      145.    Plaintiff realleges and incorporates by this reference all preceding paragraphs.

18      146.    In return for money, BIG prepared consumer reports as defined by 15 U.S.C. § 1681a(d) on

19  Plaintiff and the other members of the BIG Class, and provided them to Bank of America and other

20  employers for employment purposes.

21      147.    As such,  BIG is a consumer reporting agency as defined by 15 U.S.C. §1681a(f), had an

22  affirmative duty to provide, with every consumer report it provided to its customers, " a summary of the

23  consumer's rights under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title."

24  15 U.S.C. §15 U.S.C. 1681b(b)(1)(B).

25      148.    Despite this clear affirmative duty owed by BIG under 15 U.S.C. §§ 1681b(b)(1)(B), BIG

26  did not provide such a summary of consumer rights to Plaintiff or any other member of the BIG Class in

27  conjunction with its consumer reports, nor does it insure that individuals like Plaintiff, and other members

28  of the BIG Class, are provided with a summary of rights under the FCRA prior to submitting consumer

reports to its customers.

149.     BIG knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission. BIG obtained or had available substantial written materials which apprised them of their duties under the FCRA. Any reasonable consumer reporting agency knows about or can easily discover these obligations.

150.     Despite knowing of these legal obligations, BIG intentionally or recklessly acted consciously in breaching its known duties and depriving Plaintiff and the other BIG Class members their rights under the FCRA.

151.     The foregoing violations were willful. BIG  acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other members of the BIG Class under 15 U.S.C. §§ 1681b(b)(1)(B).

152.     As a result of such conduct, Plaintiff and the other members of the BIG Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. §1681n(a)(1)(A).

153.     As a result of such conduct, Plaintiff and the other members of the BIG Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

154.     As a result of such conduct, Plaintiff and the other members of the BIG Class are further entitled to recover their attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

### NINTH CLAIM FOR RELIEF
**For Violation of the Investigative Consumer Reporting Agencies Act
(Violation of Cal. Civil Code § 1786.18)
(On behalf of the Plaintiff and BIG California Antedated Subclass the Against BIG)**

155.     Plaintiff alleges and incorporates by this reference the allegations in all preceding paragraphs.

156.     California Civil Code § 1786.18 prohibits an investigative credit reporting agency from making or furnishing any investigative consumer report containing records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years. These items of information shall no longer be reported if at any time it is learned that, in the case of a conviction, a full pardon has been granted or, in the

case of an arrest, indictment, information, or misdemeanor complaint, a conviction did not result.

157.    At all relevant times, BIG violated California Civil Code § 1786.18 by issuing consumer reports on Plaintiff and the other members of the BIG California Antedated Subclass included (1) records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years; (2) a conviction where a full pardon has been granted or, an arrest, indictment, information, or misdemeanor complaint, a conviction did not result; and/or (3) any other adverse information that antedates the report by more than seven years.

158.    With respect to each of the aforementioned violations of the ICRAA provisions, BIG is liable to Plaintiff and the other members of the BIG California Antedated Subclass in the amount of the greater of the actual damages sustained as a result of the violations or $10,000 per violation pursuant to Civil Code § 1786.50(a)(1).

159.    BIG's violations were willful or grossly negligent within the meaning of California Civil Code § 1786.50(b).

160.    Plaintiff and the other members of the BIG California Antedated Subclass seek all available remedies pursuant to California Civil Code § 1786.50, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

**TENTH CLAIM FOR RELIEF**
**For Violation of the Investigative Consumer Reporting Agencies Act**
**(Violation of Cal. Civil Code § 1786.16)**
**(On behalf of the Plaintiff and the BIG California Subclass**
**against defendant BIG)**

161.    Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

162.    At all relevant times, BIG was a "person" under Civil Code § 1786.2(a), and prepared and furnished investigative consumer reports as defined under Civil Code § 1786.2(c) on Plaintiff and the BIG California Subclass to BIG's customers for employment purposes as defined under Civil Code § 1786.2(f).

163.    Civil Code § 1786.12(f) prohibits an investigative credit reporting agency from making or furnishing any investigative consumer report "unless the agency has received the certification under paragraph (4) of subdivision (a) of Section 1786.16 from the person requesting the report."

164.    Civil Code § 1786.16(a)(4) states that "The person procuring or causing the request to be

1   made shall certify to the investigative consumer reporting agency that the person has made the applicable

2   disclosures to the consumer required by this subdivision and that the person will comply with subdivision

3   (b)."

4          165.    As alleged above, during all relevant times, BIG's customers, as persons procuring or causing

5   the request to be made, did not make the applicable disclosures to Plaintiff and the BIG California Subclass,

6   in that the disclosures given to Plaintiff and the BIG California Subclass was not a "clear and conspicuous"

7   disclosure in a writing before the report was procured or caused to be made in a document that consists

8   solely of the disclosure, nor did it contain the permissible purpose of the report under Labor Code §1024.5,

9   nor clearly identify of the name and address of the investigative consumer reporting agency conducting the

10  investigation.

11         166.    BIG violated California Civil Code §1786.12(f) by furnishing investigative consumer reports

12  regarding Plaintiff and the BIG California Subclass for employment purposes to BIG's customers without

13  first obtaining from Bank of America and its other customers to whom they furnished such reports a

14  certification by such person as to each report it furnished to such person that such person "has made the

15  applicable disclosures to the consumer required" by the ICRAA.

16         167.    BIG knew or should have known about its legal obligations in the plain language of under

17  the ICRAA. The language of Civil Code § 1786.12(f) is plain and clearly ascertainable. By failing to obtain

18  the required specific certification from Bank of America and their other customers whom BIG furnished

19  investigative consumer reports as to each report provided before providing each report that was the subject

20  of the certification, BIG violated the express requirement of Civil Code § 1786.12.

21         168.    BIG was grossly negligent in violating or willfully violated the ICRAA by acting without

22  a good faith, reasonable belief in the legality of its actions, and/or in deliberate or reckless disregard of its

23  legal obligations and the rights of Plaintiff and the BIG California Subclass under the statute.

24         169.    Plaintiff and the BIG California Subclass have been damaged by these violations and seek

25  the following relief pursuant to pursuant to Civil Code § 1786.50:

26         a.      Any actual damages sustained by the consumer as a result of the failure or, ten thousand

27                 dollars ($10,000), whichever sum is greater;

28         b.      the costs of the action together with reasonable attorney's fees as determined by the court;

First Amended Class Action Complaint              33

1    and

2    c.    In the case of a violation that was grossly negligent or willful, punitive damages.

3    **ELEVENTH CLAIM FOR RELIEF**
**For Violation of the Federal Credit Reporting Act**
4    **Conducting Background Checks Without Proper Certification**
**(Violation of 15 U.S.C. § 1681b(b)(1)(A))**
5    **(on behalf of the Plaintiff and the TALX Class against TALX)**

6    170.    Plaintiff realleges and incorporates by this reference all preceding paragraphs.

7    171.    In return for money, TALX  prepared and provided consumer reports on Plaintiff and the

8    members of the TALX Class, to Bank of America and other third-parties for employment purposes.

9    172.    As such, TALX is a "consumer reporting agency," as defined by 15 U.S.C. §1681a(f), which

10   defines a consumer reporting agency as, " any person which, for monetary fees, dues, or on a cooperative

11   nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer

12   credit information or other information on consumers for the purpose of furnishing consumer reports to third

13   parties, and which uses any means or facility of interstate commerce for the purpose of preparing or

14   furnishing consumer reports."

15   173.    As a consumer reporting agency, TALX had an affirmative duty to insure that its customers

16   complied with the FCRA. 15 U.S.C. §1681b(b)(1)(A)(I) requires that TALX, as a consumer reporting

17   agency, may only furnish a consumer report for employment purposes if, " the person who obtains such

18   report from the agency certifies to the agency that (I) the person has complied with paragraph (2) with

19   respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer

20   report if paragraph (3) becomes applicable."

21   174.    15 U.S.C. § 1681b(b)(2)(A)(I) provides that a person may not procure a consumer report for

22   employment purposes unless the person provides the applicant with a "clear and conspicuous" disclosure

23   "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(I).  This practice violates

24   the plain language of the statute, and flies in the face of unambiguous case law and regulatory guidance from

25   the FTC. See, e.g., *E.E.O.C. v. Video Only, Inc*., No. 06-1362, 2008 WL 2433841, at *11 (D.Or. June 11,

26   2008) ("I grant summary judgment of liability that Video Only violated . . . 15 § 1681b(b)(2)(A)(I). This

27   section provides that at any time before the report is procured, a disclosure is made in a document that

28   consists solely of the disclosure that a consumer report may be obtained for employment purposes. Video

1   Only disclosed this possibility as part of its job application, which is not a document consisting solely of

2   the disclosure.")

3       175.   TALX violated 15 U.S.C. § 1681b(b)(1)(A) by furnishing consumer reports as defined by

4   15 U.S.C. § 1681a(d) regarding Plaintiff and the other members of the TALX Class for employment

5   purposes to Bank of America and its other customers without first obtaining from Bank of America and its

6   other customers to whom they furnished such reports a certification by such person as to each consumer

7   report it furnished to such person that such person "has complied with paragraph (2) [of Section 1681b(b)]

8   with respect to the consumer report, and the person will comply with paragraph (3) with respect to the

9   consumer report if paragraph (3) [of Section 1681b(b)] becomes applicable."

10      176.   TALX knew or should have known about their legal obligations under the FCRA. The

11  language of 15 U.S.C. § 1681b(b)(1)(A)(I) is plain and clearly ascertainable. By failing to obtain the

12  required specific certification from Bank of America and other persons to whom Defendants furnished

13  consumer reports as to each consumer report provided before providing the specific consumer report that

14  was the subject of the certification, TALX violated the express requirement of 15 U.S.C. §

15  1681b(b)(1)(A)(I).

16      177.   TALX  knew or should have known about its legal obligations under the FCRA. These

17  obligations are well established in the plain language of the FCRA and in the promulgations of the Federal

18  Trade Commission. TALX obtained or had available substantial written materials which apprised them of

19  their duties under the FCRA. Any reasonable consumer reporting agency knows about or can easily discover

20  these obligations.

21      178.   Despite knowing of these legal obligations, TALX  intentionally or recklessly acted

22  consciously in breaching their known duties and depriving Plaintiff and other TALX Class members their

23  rights under the FCRA. Plaintiff believes that TALX did not obtain proper and valid certifications before

24  providing consumer reports to those persons to whom they were provided because TALX did not want to

25  incur the expenses associated with obtaining such certifications as to each consumer as to whom a consumer

26  report was generated and provided by TALX. Moreover, TALX knew or should have known that the

27  Disclosure Statement form used by Bank of America and its other customers did not comply with 15 U.S.C.

28  §1681b(b)(2)(A), and thus, even if TALX  received blanket prospective certification from its customers,

1   they knew or should have known that the certification was false.

2       179.    The foregoing violations were willful. TALX acted in deliberate or reckless disregard of its

3   obligations and the rights of Plaintiff and the other members of the members of the TALX Class under 15

4   U.S.C. §§ 1681b(b)(1)(A)(I). Their willful conduct is reflected by, inter alia, the following:

5           a. TALX Corporation is a corporation which specializes in furnishing consumer credit

6           reports for employment purposes and has access to legal advice through its outside

7           employment counsel. Yet, there is no contemporaneous evidence that TALX determined that

8           its conduct was lawful;

9           b. In fact, TALX Corporation has previously been sued for failing to comply with the FCRA;

10          and,

11          c. TALX's similarly situated competitors have adopted policies of ensuring that their

12          customers use disclosure forms that comply with the FCRA

13      180.    As a result of such conduct, Plaintiff and the other members of the members of the TALX

14  Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every

15  one of these violations pursuant to 15 U.S.C. §1681n(a)(1)(A).

16      181.    As a result of such conduct, Plaintiff and the other members of the members of the TALX

17  Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. §

18  1681n(a)(2).

19      182.    As a result of such conduct, Plaintiff and the other members of the members of the TALX

20  Class are further entitled to recover their attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

21                          **PRAYER FOR RELIEF**

22      WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests of this Court

23  the following relief:

24      1.      That the Court issue an Order certifying the classes and subclasses herein, appointing the

25  named Plaintiff as a representative of all others similarly situated, and appointing Keegan & Baker LLP and

26  the United Employees Law Group, P.C.,  as counsel for members of the Classes;

27      2.      For an Order requiring Defendants Bank of America, BIG and TALX to identify each of the

28  members of the classes and subclasses by name, home address, and home telephone number;

First Amended Class Action Complaint                36

3.     For the creation of an administrative process wherein each injured member of the classes and subclasses may submit a claim in order to receive his or her money;

4.     For statutory, general, compensatory, and punitive damages for the classes and subclasses according to proof at trial;

5.     An award of appropriate equitable relief, including but not limited to preliminary, permanent, and mandatory injunctive relief prohibiting Defendants and their agents from committing further unlawful conduct in violation of the FCRA, the ICRAA and the CCRAA;

6.     Costs of suit, including reasonable attorneys' fees and costs, as provided by statute, including 15 U.S.C. § 1681n, 15 U.S.C. § 1681o, California Civil Code § 1785.31, California Civil Code § 1786.50, California Code of Civil Procedure § 1021.5, and the common fund doctrine;

7.     For interest at the legal rate of 10% per annum;

8.     Such further relief as the Court deems just and proper.

Dated: September 22, 2017                          KEEGAN & BAKER, LLP


                                                   s/ James M. Treglio
                                                   Patrick N. Keegan, Esq.
                                                   James M. Treglio, Esq.
                                                   Attorneys for Plaintiff SERGIO MARQUEZ

1

## DEMAND FOR JURY TRIAL

2       Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Class hereby

3   demand a jury trial on all claims for relief and claims with respect to which they have a right to a jury trial.

4   Dated:  September 22, 2017                          KEEGAN & BAKER, LLP

5

6                                                        s/ James M. Treglio
                                                         Patrick N. Keegan, Esq.
7                                                        James M. Treglio, Esq.
                                                         Attorneys for Plaintiff SERGIO MARQUEZ

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on September 22, 2017, a true and correct copy of the **FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's EM/ECF System.

s/ James M. Treglio         
James M. Treglio, Esq.
jtreglio@keeganbaker.com

EXHIBIT 1



**Federal Trade Commission**
**Protecting America's Consumers**

---

### UNITED STATES OF AMERICA
### FEDERAL TRADE COMMISSION
### WASHINGTON, D.C. 20580

Division of Credit Practices
Bureau of Consumer Protection
Clarke W. Brinckerhoff
Attorney

September 9, 1998

H. Rowan Leathers, III, Esq.
MANIER & HEROD
First Union Tower - Suite 2200
150 Fourth Avenue North
Nashville, Tennessee 37219

Re: Sections 603(d), 603(f), and 604(b) of the Fair Credit Reporting Act

Dear Mr. Leathers:

This responds to your letter dated concerning the application of the Fair Credit Reporting Act ("FCRA") to Employment Trac ("ET"), your client. ET provides information to prospective employers about the prior work experience of applicants, primarily in the fast food industry. ET provides the information telephonically (i.e., without a written report) on a specific applicant upon request from a subscriber to this service.

You ask three questions, which we report verbatim preceding our analysis of each.

*1. Is ET's provision of this type of information subject to the FCRA?*

Yes. ET is a "consumer reporting agency" ("CRA") because Section 603(f) defines that term to include any party that "for monetary fees . . . regularly engages in . . . assembling . . . information on consumers for the purpose of furnishing consumer reports to third parties" in interstate commerce. Each report on an employment applicant is a "consumer report" because Section 603(d) defines that term very broadly to include any information bearing on a consumer's credit standing, "character, general reputation, personal characteristics, or mode of living" which is used (among other things) to make employment decisions. An individual's employment history, based on data in ET's files, unquestionably bears on his or her character, reputation, and other listed characteristics.

*2. Section 604(b)(2)(A) of the FCRA seems to require that the consumer disclosure be "in a document that consists solely of the disclosure." With regard to this requirement, is it sufficient that the disclosure be prominently set forth within an application for employment, or must it truly be included on a separate document?*

The disclosure may not be part of an employment application, because the language you quote is intended to ensure that it appears conspicuously in a document not encumbered by any other information. The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side with the disclosure. A disclosure that is combined with many items in an employment application -- no matter how "prominently" it appears -- is not "in a document that consists solely of the disclosure" as required by Section 604(b)(2)(A).

*3. Section 604(b)(3)(A) of the FCRA requires that a copy of the "report" be provided by the user to the consumer prior to adverse employment action being taken based in whole or in part on the report. In this instance, the report provided to the user is a verbal report, and not a written report. We would appreciate some guidance concerning how to provide a "copy of the report" within the context of this transaction.*

The purpose of this section, which was added in the 1996 amendments to the FCRA, is to provide the consumer with knowledge of information the CRA has reported about him or her that is going to result in adverse action in an employment context, affording the individual an opportunity to respond to it.(1) Where a written report exists, as in the case of a traditional

consumer report, Section 604(b)(3)(A) requires that the actual unexpurgated report must be provided to the applicant.(2) Where the employer possesses no written report because the information is provided verbally, as in ET's business, we believe it the employer may comply with Section 604(b)(3)(A) by telling the applicant orally what is in the report before taking adverse action. Because the report itself is oral, an oral "copy" seems the proper method of compliance. An employer that verbally provides to the applicant the report it receives (and informs him or her that ET is the source of the report), before rejecting the application, complies with the provision by conveying information that Congress intended the consumer to know prior to suffering adverse action.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff

1. S. Rept. 104-184, 104th Cong., 1st Sess. 35.

2. The enclosed staff opinion letter (Hahn, 7/8/98) discusses this subsection in that regard.

_____
Last Modified: Friday, June 24, 2011

EXHIBIT 2

# 40 YEARS OF EXPERIENCE

## WITH THE FAIR CREDIT REPORTING ACT

### AN FTC STAFF REPORT WITH SUMMARY OF INTERPRETATIONS



July 2011
Federal Trade Commission

B. Employment reports with public record data. An employer must comply with the disclosure and consumer authorization requirements of section 604(b)(2), even where the consumer report is comprised of public records and the CRA has already made the disclosure required by section 613, which specifically covers reports of public record information for employment purposes.[154]

### 2. WRITTEN DISCLOSURE AND CONSENT REQUIRED

Section 604(b)(2)(A) imposes an obligation on employers. It requires that, before obtaining consumer reports for employment purposes, employers must disclose this fact to each affected consumer in writing and obtain the consumer's written authorization.[155]

### 3. "IN A DOCUMENT THAT CONSISTS SOLELY OF THE DISCLOSURE"

A. May include brief description of the nature of consumer reports. The document that sets forth the disclosure to the consumer that a consumer report may be obtained for employment purposes may contain only minor additional items. The document may include a brief description of the nature of the consumer reports covered if the description does not confuse the consumer or detract from the mandated disclosure.[156]

B. May include consumer authorization. The disclosure document may include the required request for consumer authorization for procurement of a report for employment purposes.[157] If the disclosure notice and the consumer authorization are combined, certain identifying information may be included in the form; however, the notice may not include extraneous or contradictory information, such as a request for a consumer's waiver of his or her rights under the FCRA.[158]

C. May include investigative consumer report disclosure. If an employer intends to do an investigative consumer report on an employee or prospective employee, it must provide a disclosure under both this section and section 606.[159] An employer may include, with the disclosure required by section 604(b)(2)(A), a very limited notice of intent to procure an investigative consumer report required by section 606(a). However, the employer may not meet its obligation under section 606(b) to describe the nature and scope of the investigation in the same notice, because it would likely overshadow the disclosure required by this section.[160]

D. May not be included in employment application. The disclosure cannot be part of a printed employment application.[161]

### 4. TIMING AND EFFECTIVENESS OF DISCLOSURE AND AUTHORIZATION

The required disclosure may be made, and the authorization obtained, when the consumer applies for or commences employment.[162] An employer may use a one-time blanket disclosure, and obtain permission from applicants or current employees to procure consumer reports, at any time during the application process or during the employee's tenure.[163] The disclosure must state "clearly and conspicuously" that the employer intends for the disclosure and authorization to cover both the application for employment and, if the consumer is hired, any additional consumer reports obtained while the individual is an employee.[164] A valid disclosure and consent remain effective throughout the duration of employment.

51