IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO MARQUEZ, individually and on behalf of others similarly situated,<br><br>  Plaintiff,<br><br> v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION, et al.,<br><br>  Defendants. | Case No. 17-cv-00555-CW<br><br>ORDER GRANTING DEFENDANT BANK OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(Dkt. No. 78) |

Plaintiff Sergio Marquez brings this putative class action lawsuit against Defendants Bank of America, N.A. (BOA), Business Information Group, Inc. (BIG), and TALX Corporation, d/b/a Equifax Workforces Solutions (TALX). On January 9, 2018, BOA brought a motion for partial summary judgment on Plaintiff's First, Third, and Fifth Causes of Action.[1] Plaintiff filed an opposition and BOA filed a reply. On March 20, 2018, the parties appeared for a hearing. Having considered the papers and the arguments of counsel, the Court GRANTS BOA's motion for partial summary judgment.

---

[1] TALX simultaneously filed a motion to dismiss Plaintiff's Eleventh Cause of Action for lack of subject matter jurisdiction. TALX's motion was heard on the same day as BOA's motion. On March 28, 2018, however, Plaintiff and TALX informed the Court that they had reached a settlement in principle and requested that the Court defer ruling on TALX's motion to dismiss, which the Court will do. Docket Nos. 102, 104.

BACKGROUND

In October 2016, Plaintiff applied for employment with BOA as a Mortgage Loan Officer. During the application process, Plaintiff reviewed and electronically signed forms as part of an online background check. Declaration of Cindy Prebil (Prebil Decl.) ¶ 14. Plaintiff signed an "FCRA Disclosure and Authorization" form (Disclosure Form), a one-page document which states:

> In connection with your employment or application for employment or contract assignment with Bank of America (the "Bank"), the Bank may obtain, where permitted, one or more consumer reports as defined in the Fair Credit Reporting Act (15 U.S.C. 1681) ("FCRA"). Consumer reports may contain information concerning your criminal history, fingerprint records, character, general reputation, employment history, civil history, credit history, education, academic and professional credentials, qualifications, motor vehicle record, and other background checks, based on the background check requirements for the subject position at the Bank. In some states, such as California, these reports are referred to as "Investigative Consumer Reports."

Prebil Decl., Ex. 2 at 1; see also id. ¶ 5. The Disclosure Form goes on to provide that the "Bank may obtain consumer reports from various entities, including, but not limited to:" "Equifax Workforce Solutions, a/k/a TALX Corporation," and "Business Information Group, Inc. (BIG)." Prebil Decl., Ex. 2 at 1. The form provides the entities' addresses, telephone numbers, and webpages where additional information and the entities' privacy policies can be found. Id. The form then provides an Authorization:

> By signing below, you:
>
> 1. Authorize the Bank to obtain consumer reports about you at any time after receipt of this authorization and throughout your employment, if applicable; and
>
> 2. Agree, as permitted by law, that notices, documents

2

> and communications may be provided electronically and will meet the requirements set forth under Federal and/or State law, and agree that a fax or photocopy of this authorization with your signature should be accepted with the same authority as the original.
>
> By checking the box below you authorize Bank of America to obtain, where permitted, one or more consumer reports as described above for employment purposes.

Id. Beneath the authorization is a checkbox next to the statement "Yes, I authorize Bank of America to obtain, where permitted, one or more consumer reports for employment purposes."; (2) the applicant's name and date; and (3) a space where the applicant can use a mouse to electronically draw his signature. Id.

Plaintiff executed the Disclosure Form and Authorization on October 29, 2016. Prebil Decl. ¶ 7, Ex. 2 at 2. After signing the Authorization, Plaintiff clicked "Continue," which brought up another page entitled "Other Background Check Information," which contained information about: (1) state and local laws and ordinances governing background checks; (2) the Bank's fingerprinting and criminal background check process; and (3) additional checks for certain positions subject to Financial Industry Regulatory Authority (FINRA). Prebil Decl., Ex. 2 at 2. This page also allowed Plaintiff to select an option "to indicate if [he] would like a copy of [his] consumer report free of charge." Id. at 2. Plaintiff selected this option. Id.

After submitting his application, on October 31, 2016, Plaintiff was offered a position with BOA, which was contingent upon a satisfactory background check. Declaration of James Treglio (Treglio Decl.), Ex. 1. Ultimately, after conducting a background check and interviewing Plaintiff about his employment

3

history, BOA decided not to hire Plaintiff. Prebil Decl. ¶ 18.

On February 2, 2017, Plaintiff filed this suit. Docket No. 1. On September 22, 2017, Plaintiff filed a first amended complaint (FAC) against Defendants, asserting claims under the Federal Credit Reporting Act (FCRA), 15 U.S.C. § 1681; the Investigative Consumer Reporting Agencies Act (ICRA), California Civil Code section 1786, et seq.; and the California Consumer Credit Reporting Agencies Act (CCRA), California Civil Code section 1785.1 et seq.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may

4

affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the

burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

Federal Rule of Civil Procedure 56(d) provides that a court may defer considering a motion for summary judgment, deny it, or issue any other appropriate order if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."

## DISCUSSION

BOA brings a motion for summary judgment with respect to Plaintiff's First, Third, and Fifth Causes of Action.

I.  First Cause of Action: Violation of the FCRA

Section 1681b(b)(2)A requires that a person may not procure a consumer report for employment purposes unless:

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

In his First Cause of Action, Plaintiff alleges that BOA violated 15 U.S.C. § 1681b(b)(2)(A) because the Disclosure Form was not a stand-alone document in that it contained: (1) extraneous information such as state law disclosures and

6

(2) a liability waiver.  Both arguments lack merit.

Plaintiff alleges that the Disclosure Form was not a stand-alone document and instead appeared alongside other documents as part of BOA's job application process, including other information related to his background check, such as California state law disclosures.  Section 1681b(b)(2)(A) requires that the disclosure be "clear and conspicuous" and "in a document that consists solely of the disclosure."  As the Federal Trade Commission has noted, the "the reason for specifying a stand-alone disclosure was so that consumers will not be distracted by additional information at the time the disclosure is given."  Letter from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Division of Credit Practices, 1997 WL 33791227, at *1 (Oct. 21, 1997).  The disclosure may be accompanied by the authorization for procurement of a report required by § 1681b(b)(2)(B).  Id.  BOA has provided a screenshot showing that the Disclosure Form and Authorization appeared as a stand-alone electronic page.  Prebil Decl. ¶¶ 4-5, Ex. 1.  This complies with § 1681b(b)(2)(A).

Plaintiff alleges that the Disclosure Form and Authorization was not a stand-alone document because it was displayed as part of BOA's online application process, which included other information such as various state law disclosures and requirements for Plaintiff's signature.  But the Disclosure and Authorization appeared as a separate and distinct web page separated from the rest of the documents.  Id., Ex. 1.  No other information was displayed on the screen alongside the Disclosure and Authorization.  Plaintiff was required to click "Continue" to

view the rest of the online application. Id. ¶ 8. This qualifies as a stand-alone document for purposes of § 1681b(b)(2)(A). See Burnthorne-Martinez v. Sephora USA, Inc., No. 16-CV-02843-YGR, 2016 WL 6892721, at *6 (N.D. Cal. Nov. 23, 2016) (noting that the FCRA requires a separate and distinct writing and, "[b]y analogy, the web page would also need to be separate and distinct."). As stated by a Central District of California court considering an almost identical BOA disclosure form provided as part of an online application, the "FCRA does not prohibit an employer from providing an FCRA disclosure as part of the employer's job application process. Nor does the FCRA prohibit an employer from providing an FCRA disclosure at the same time the employer provides other employment documents." Newton v. Bank of Am., 2015 WL 10435907, at *8 (C.D. Cal. May 12, 2015).

Plaintiff also alleges that the Disclosure Form improperly includes a liability waiver. As the Ninth Circuit has found, "the FCRA unambiguously bars a prospective employer from including a liability waiver on a disclosure document provided a job applicant pursuant to Section 1681b(b)(2)(A)." Syed v. M-I, LLC, 853 F.3d 492, 503 (9th Cir.), cert. denied, 138 S. Ct. 447, (2017).

In Syed, the liability waiver read:

> I understand the information obtained will be used as one basis for employment or denial of employment. I hereby discharge, release and indemnify prospective employer, PreCheck, Inc., their agents, servants and employees, and all parties that rely on this release and/or the information obtained with this release from any and all liability and claims arising by reason of the use of this release and dissemination of information that is false and untrue if obtained by a

8

<u>third party without verification.</u>

Id. at 497–98 (emphasis added). District courts have similarly found that clear waivers of all liability associated with the background check process violate the FCRA. See, e.g., Cunha v. IntelliCheck, LLC, 254 F. Supp. 3d 1124, 1130 (N.D. Cal. 2017).

Here, Plaintiff contends that the following statement appearing in the Authorization constitutes an illegal liability waiver:

> By signing below, you:
> [ . . .]
> 2. <u>Agree</u>, as permitted by law, <u>that notices, documents and communications</u> may be provided electronically and <u>will meet the requirements set forth under Federal and/or State law</u>, and agree that a fax or photocopy of this authorization with your signature should be accepted with the same authority as the original.

Prebil Decl., Ex. 2 (emphasis added). Plaintiff contends that this constitutes a waiver of liability under the FCRA, ICRA, and CCRA, which is illegal under Syed.

Plaintiff's reading of the Authorization as a liability waiver is strained. As both parties agree, contracts should be "construed as a whole" and should "be interpreted to give effect to the mutual intention of the parties." Opp. at 12, Reply at 3; see also Leo F. Piazza Paving Co. v. Found. Constructors, Inc., 128 Cal. App. 3d 583, 591 (1981). In Syed, the liability waiver clearly and unambiguously served as a "broad release of liability" for all violations of the FCRA. Syed, 853 F.3d at 498. By contrast, the portion of the Authorization pointed out by Plaintiff serves to advise Plaintiff that notices, documents and communications may be provided electronically and that such notices, documents and communications should not violate the law

9

simply because they are provided electronically. Read in context, this advises that the Disclosure Form's digital nature does not affect its validity. The Authorization lacks the "clear, unambiguous, and explicit" language necessary to effectuate a waiver of all liability. R.H. v. Los Gatos Union Sch. Dist., 33 F. Supp. 3d 1138, 1166 (N.D. Cal. 2014).

Because the Disclosure Form was a stand-alone document that contained no extraneous information or liability waiver, it complies with § 1681b(b)(2)(A).

## II. Third Cause of Action: Violation of the ICRA

The ICRA, California Civil Code section 1786.16, provides that a person may procure an investigative consumer report only if the person:

> procuring or causing the report to be made provides a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure, that:
>
> (i) An investigative consumer report may be obtained.
>
> (ii) The permissible purpose of the report is identified.
>
> (iii) The disclosure may include information on the consumer's character, general reputation, personal characteristics, and mode of living.
>
> (iv) Identifies the name, address, and telephone number of the investigative consumer reporting agency conducting the investigation.
>
> (v) Notifies the consumer in writing of the nature and scope of the investigation requested, including a summary of the provisions of Section 1786.22.
>
> (vi) Notifies the consumer of the Internet Web site address of the investigative consumer reporting agency identified in clause (iv), or, if the agency has no Internet Web site address, the telephone number of the agency, where the consumer may find information about the investigative reporting agency's privacy practices,

10

including whether the consumer's personal information
                will be sent outside the United States or its
                territories and information that complies with
                subdivision (d) of Section 1786.20.

Plaintiff asserts that the Disclosure Form violates the ICRA in two respects: (1) the disclosure was not provided in a document consisting "solely" of the disclosure (repeating many of the same arguments asserted in his FCRA claim) and (2) the disclosure did not identify the "investigative consumer reporting agency conducting the investigation," as identified in subsection (iv).

For the reasons stated in the previous section, Plaintiff's first assertion lacks merit. The Disclosure Form was a stand-alone document and did not contain extraneous information. As for Plaintiff's second assertion, BOA points out that it properly disclosed the information for the two parties that would provide investigative consumer reports, namely, TALX and BIG. Plaintiff responds that BOA did not disclose that, while the investigative consumer report on Plaintiff was contracted to BIG, it was actually performed by third parties Fieldprint, Inc. (which in turn requested a report from the FBI) and Transunion, LLC, as stated in a declaration provided by BIG. See also Declaration of Timothy Gaudreau (Gaudreau Decl.) ¶¶ 13-14. But the plain language of section 178616(a)(2)(iv) only requires that BOA identify "the investigative consumer reporting agency conducting the investigation." Here, BIG is the "investigative consumer reporting agency conducting the investigation." That BIG obtained information from several different repositories, such as Fieldprint, Transunion, and the FBI, does not take away from this fact. BOA was only obliged to disclose BIG, the agency it

11

engaged to provide a report, and not the various sources that BIG used in conducting its investigation.

III. Fifth Cause of Action: Violation of the CCRA

The CCRA, California Civil Code section 1785.20.5 states:

> Prior to requesting a consumer credit report for employment purposes, the user of the report shall provide written notice to the person involved. The notice shall inform the person that a report will be used, and shall identify the specific basis under subdivision (a) of Section 1024.5 of the Labor Code for use of the report. The notice shall also inform the person of the source of the report, and shall contain a box that the person may check off to receive a copy of the credit report. If the consumer indicates that he or she wishes to receive a copy of the report, the user shall request that a copy be provided to the person when the user requests its copy from the credit reporting agency. The report to the user and to the subject person shall be provided contemporaneously and at no charge to the subject person.

In his Fifth Cause of Action, Plaintiff asserts that BOA violated this section because it did not disclose that a consumer credit report would be used, why it would be used, and who would issue the report.

As a preliminary matter, BOA asserts that it was excused from compliance with section 1785.20 because of an exemption in California Civil Code section 1024.5. Section 1024.5 provides that an employer or prospective employer shall not use a consumer credit report for employment purposes unless the position is one that is listed in subsection (a). Section 1024.5(b) states:

> (b) This section does not apply to a person or business subject to Sections 6801 to 6809, inclusive, of Title 15 of the United States Code and state and federal statutes or regulations implementing those sections if the person or business is subject to compliance oversight by a state or federal regulatory agency with respect to those laws.

BOA asserts that it is subject to the Title 15 code sections

12

referenced here and is thus exempt under section 1024.5(b). The exemption of section 1024.5(b), however, appears to apply only to the restrictions of "this section," i.e., section 1024.5, and not section 1785.20.

In any event, Plaintiff's arguments that the Disclosure Form does not comply with the CCRA lack merit. The Disclosure Form disclosed that a consumer credit report would be used. See Prebil Decl., Ex. 2 at 1 ("Consumer reports may contain information concerning your . . . credit history . . . "). It also disclosed the source of the consumer credit report requested by BOA. Id. ("Bank may obtain consumer reports from various entities, including, but not limited to" TALX and BIG). Again, Plaintiff's argument that BIG pulled information from other sources in compiling its consumer credit report goes too far. The statute requires BOA to disclose the source of the report it requested, not all of the various repositories of information that the source used in compiling its report. BOA was not required to disclose why it requested the report. Nor was BOA required to disclose which basis provided in section 1024.5(a) applied, because BOA is exempt under section 1024.5(b), which Plaintiff does not contest.

IV. Plaintiff's Rule 56(d) Request

Plaintiff requests that the Court defer ruling on BOA's summary judgment motion, arguing that additional discovery is needed. Plaintiff has not explained why the requested discovery is essential to his defense. Accordingly, his request is denied.

CONCLUSION

BOA's motion for summary judgment on Plaintiff's First, Third, and Fifth Causes of Action is GRANTED.  Plaintiff's Second and Fourth Causes of Action against BOA remain in the case.

IT IS SO ORDERED.

Dated: April 25, 2018

CLAUDIA WILKEN
United States District Judge